UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GLEN O'GILVIE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-cv-00531 (ABJ) |
| CORPORATION FOR NATIONAL COMMUNITY SERVICE, *et al.* | ) ) ) ) | |
| Defendants. | ) ) ) | |

# MEMORANDUM OPINION

Plaintiff Glen O'Gilvie has brought this action under the Administrative Procedures Act, 5 U.S.C. §§ 702, 703 ("APA"), against the Corporation for National Community Service ("CNCS"); William Anderson, the Deputy Chief Financial Officer of CNCS, in his capacity as its Debarment Official; Kenneth Bach, in his official capacity as the Acting Inspector General ("IG") for CNCS; and Gerald Walpin, the former Inspector General for CNCS; and the AmeriCorps Program (collectively "defendants"). He seeks declaratory and mandamus relief to challenge a 180-day debarment from participation in federal procurement and non-procurement programs that expired in December 2009. Defendants have moved to dismiss plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 56. For the reasons stated below, the Court agrees that plaintiff's action is moot, and defendants' motion to dismiss for lack of subject matter jurisdiction should be granted.

## BACKGROUND

Plaintiff previously served as the President and CEO of Earth Conservation Corps of Washington, D.C. ("ECC"), a 501(c)(3) entity whose mission was to recruit and train at-risk

youths and young adults under the AmeriCorps program. Compl. ¶ 2. The debarment action stemmed from plaintiff's acts and omissions during a three-month period from February to May 2007. Since July 2008, plaintiff has been employed elsewhere, as the CEO of the Center for Nonprofit Advancement ("CNA"). *Id.* ¶ 1.

ECC derived a portion of its annual operating revenue from non-procurement funding obtained from other non-profit entities, which, in turn, received their funding from CNCS. *Id.* ¶ 2. In June 2009, CNCS found that plaintiff failed to adequately supervise and manage an AmeriCorps grant program operated by ECC, and it debarred him from government programs for 180 days. *Id.* ¶¶ 42–43. Specifically, CNCS found that plaintiff failed to provide ECC AmeriCorps members sufficient opportunities to earn the required 1,700 service hours during the 2006–07 service year, and that he failed to supervise an employee, Brandon Swails, who fell short in a number of ways, but most significantly, approved the submission of inflated service hours for certain ECC AmeriCorps members. *Id.* ¶ 36.

On February 28, 2009, CNCS issued a Notice of Debarment Proceeding, proposing a debarment for a period of three years. *Id.* ¶ 33. Between July 2008 and May 2009, plaintiff presented CNCS with documents and declarations refuting the allegations, and he alleges that his evidentiary presentation was "credible [and] abundant." Compl. ¶ 39.[1] The Notice of Debarment was issued on June 18, 2009, accompanied by a lengthy explanation. Compl. ¶ 42;

---

[1] Plaintiff's five voluminous submissions in opposition to the proposed debarment are detailed in the Notice of Debarment attached to the complaint as Exhibit 1. *See* Exhibit 1 at 1–2. Plaintiff states that "[t]he administrative record compiled during the debarment proceedings was not insignificant, comprising several volumes and several thousand pages of supporting documentation, corporate records, and declarations." Compl. ¶ 56.

Compl. Exhibit 1. Plaintiff did not challenge the debarment when it was issued, and on December 15, 2009, his debarment period came to an end. *Id.* at 2.

On April 1, 2010, plaintiff filed a 65 page, 181 paragraph complaint detailing alleged factual errors and procedural defects underlying the debarment decision. He asserts in paragraph 86 that "[t]he Notice of Debarment is materially flawed, factually inaccurate and incomplete, unsupported by a preponderance of the evidence, and therefore, arbitrary, capricious, and irrational" for a series of reasons. Paragraph 87 of the complaint, which comprises 12 pages, faults the Notice for "wrongly finding, concluding, suggesting, or implying" a series of "material facts which are genuinely in dispute." Plaintiff's prolix attack on the administrative action at issue need not be set forth in detail here, because for purposes of this opinion, the relevant allegations are contained only in paragraphs 142 through 146, under the heading: "Mr. O'Gilvie has been harmed by the debarment decision and will continue to suffer harm in the future even after the debarment has expired." Compl. at 57.

In that section of his complaint, plaintiff alleges that debarment "is an extreme measure, an extraordinary measure, which is not to be imposed as a means of punishing individuals and entities . . . ," *id.* ¶ 142, and that his debarment was "unjustified and unwarranted." *Id.* ¶ 43. He asserts that his "reputation has been damaged by Mr. Anderson's debarment decision." Compl. ¶ 144. Plaintiff further alleges in paragraph 145:

> [Plaintiff's] reputation continues to be damaged even after the debarment period has expired because his debarment is now part of the public record. It is part of the government's records. It is known to his current employer, his former employer (ECC), and can readily be discovered by any person who accesses the Excluded Parties List System ("EPLS") maintained by the U.S. General Services Administration . . . . Mr. O'Gilvie's debarment is permanently recorded in the archives of EPLS. The EPLS archive is accessible to the public at large and to government officials.

Finally, plaintiff states in paragraph 146:

> For so long as [plaintiff's] debarment remains in the government's informational archives, it will impede his ability to successfully compete for procurement contracts and government funded non-procurement programs without the taint of an unreasonable and unjustifiable debarment on his record. [Plaintiff] has suffered and continues to suffer very real reputational, vocational, and economic injuries as a result of the Defendant's actions.

The defendants have moved to dismiss the action on a number of grounds, including on the basis that the lawsuit is moot.

## LEGAL STANDARD

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibly Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with examination of our jurisdiction."). Because "subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-

matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a jurisdictional challenge, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint . . . ." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, a court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). *See, e.g.*, *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Article III, section 2 of the Constitution permits federal courts to adjudicate only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). "This limitation gives rise to the doctrines of standing and mootness." *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003). "Lack of standing is a defect in subject matter jurisdiction." *George v. Napolitano*, 693 F. Supp. 2d 125, 128–29 (D.D.C. 2010), citing *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). To establish Article III standing, plaintiffs must demonstrate that "(1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *George*, 693 F. Supp. 2d at 129–30, quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*, 528 U.S. 167, 180–81 (2000). A case is moot if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-

speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990), quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990).

Reputational harm can be enough to create standing. *McBryde v. Comm. to Review Circuit Council Conduct*, 264 F.3d 52, 57 (D.C. Cir. 2001). *See also Foretich v. United States*, 351 F.3d 1198, 1214 (D.C. Cir. 2003) ("[R]eputational injury that derives directly from government action will support Article III standing to challenge that action."). "At some point, however, claims of reputational injury can be too vague and unsubstantiated to preserve a case from mootness." *McBryde*, 264 F.3d at 57, citing *Advanced Mgmt. Tech. v. FAA*, 211 F.3d 633, 636–37 (D.C. Cir. 2000). "[W]hen injury to reputation is alleged as a secondary effect of an otherwise moot action, [the D.C. Circuit] [has] required that 'some tangible, concrete effect' remain, susceptible to judicial correction." *Id.* at 57–58, quoting *Penthouse Int'l, Ltd. v. Messe*, 939 F.2d 1011, 1019 (D.C. Cir. 1991). This showing is necessary to establish the "injury in fact" and "redressability" elements of the standing analysis.

## ANALYSIS

Since the agency action that is challenged in this case – a debarment from participation in government funded programs – has expired, the Court finds that "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke,* 915 F.2d at 701. "It has long been settled that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Sierra Club v. Jackson*, --- F.3d ---, Civ. No. 10-5280, 2011 WL 2600841, at *2 (D.C. Cir. July 1, 2011) (internal quotation marks omitted), quoting *Church of Scientology v. United States,* 506

6

U.S. 9, 12 (1992). This is not even a case, like *Clarke,* where the situation changed while the matter was being litigated and appealed; this lawsuit was moot when it was filed.

Plaintiff's contends that his claim was not dead on arrival because the complaint includes a claim for ongoing reputational harm. *See* Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp."), at 12–19. [Dkt. #18]. The Court finds that the allegations in paragraphs 142 through 144, and the statement in paragraph 146 that plaintiff is suffering "very real reputational, vocational and economic injuries" are entirely conclusory, so need not be treated as true, and they are insufficient to defeat the motion to dismiss.

The analysis therefore comes down to whether plaintiff's statement that his debarment is "known to his current employer, his former employer (ECC), and can readily be discovered by any person who accesses the Excluded Parties List System ('EPLS')," Compl. ¶ 145, and his allegation that the existence of a publicly available record of the prior debarment will impede his ability to compete for government contracts and grants in the future, *id.* ¶ 146, are sufficient to create a live case or controversy and give rise to Article III standing.

Plaintiff's worries about his current and former employer do not give rise to any claim of an injury in fact; plaintiff specifically alleges that he voluntarily resigned from ECC in June of 2008 to accept his new job – he was not fired – and there is no allegation that his employment at the current job was interrupted or adversely affected in any way during the months of the debarment or after. *See id.* ¶¶ 1, 9. And any injury to his reputation in their eyes – which was not enough to prompt them to take any action against him – besides being purely speculative, could not be redressed by a Court decision two years later.

With respect to his concern about the state of the public record, plaintiff points the Court to *Hickey v. Chadick*, 649 F. Supp. 2d 770 (S.D. Ohio 2009), in which a court held that the

plaintiffs did have standing to seek judicial review of an expired debarment. However the facts of that case are distinguishable from the instant case, and they demonstrate where this plaintiff's action falls short.

>The *Hickey* court began by laying out the proper framework.
>
>A plaintiff seeking declaratory and injunctive relief must show "actual present harm" or a "significant possibility of future harm." . . . Simply being exposed to illegal conduct in the past does not, in itself, demonstrate a present case or controversy for purposes of injunctive relief unless such exposure is accompanied by continuing, present, adverse effects.

*Id.* at 774 (citations omitted). The court then found the plaintiffs' allegations to be reasonably definite to sustain standing. *Id.* at 774. It noted that according to the complaint, plaintiffs earned over $27 million in annual revenue prior to their debarment, primarily from government contracting. *Id.* It observed that under the Federal Acquisition Regulations ("FAR"), plaintiffs' past debarment would be directly related to their ability to be awarded future contracts, because contracting officers are required to consider contractors' performance records, as reflected in government sources of information, when assessing present responsibility. *Id.* at 774–75, citing 48 C.F.R. § 9.103(b), 104-1(c) and (d), and 105-1(a) and (c). Since it was "highly likely that plaintiffs will continue to submit contracts in the future," *id.*, the combination of all of those factors led the court to find the allegations of harm not "merely speculative or too attenuated to demonstrate the requisite injury." *Id.*

But in this case, the complaint contains nothing more than speculation. Plaintiff does not allege that in his current capacity as the CEO of CNA, he has applied for any government grants or contracts. Nor does the complaint allege that he has any present plans to do so in the future. The complaint does not assert that plaintiff historically made his living through government contracting; in fact, plaintiff alleges that he was *not* a government grantee, even at the time that

8

he was debarred. Compl. ¶¶ 33, 35. Plaintiff states only in his opposition to the motion to dismiss that "the possibility of applying for federal funding is neither remote nor speculative." Pls.'s Opp. at 17. This conclusory assertion does not supply the missing allegation of an injury that is concrete and particularized, actual and imminent, and not merely hypothetical or conjectural. *See George*, 693 F. Supp. 2d at 130.

Moreover, plaintiff has not demonstrated that his expired debarment would be a factor in determining his eligibility for government grants if he ever did apply. Applications for grants such as AmeriCorps grants are governed by 2 C.F.R. § 180.355,[2] which unlike the FAR provisions cited in *Hickey*, does not call for an evaluation of contractor responsibility. Instead, grant applicants are only required to certify that they (a) are not presently excluded or disqualified; (b) have not been convicted of a crime or had a civil judgment entered against them concerning a specific list of offenses in the past three years; (c) are not presently indicted or civilly charged by a government entity for the same; and (d) have not had a public transaction terminated in the past three years for cause or default. *Id.* There is no general responsibility determination that would make it necessary for the grantor to consider a past debarment.

Other cases cited by the plaintiff for the proposition that his complaint is not moot also involved regulations that specifically required the disclosure or consideration of past debarments. *See, e.g.*, *Kisser v. Cisneros*, 14 F.3d 615, 618 n.4 (D.C. Cir. 1994) (holding that appeal of expired debarment was not moot because Department of Housing and Urban Development regulations expressly requiring program applicants to explain their past debarments were likely to affect plaintiff's future transactions); *Caiola v. Carroll*, 851 F.2d 395, 401 (D.C. Cir. 1988) (holding that a regulation requiring a company seeking to sell the government supplies to certify

---

2   *See* AmeriCorps Nat'l Application Instructions at 54, Defs.' Mot. to Dismiss at Ex. 2.

whether its officers had ever been debarred was a sufficient "prospect of a lingering stigma or other adverse impact" to keep the individual plaintiffs' case alive). Like *Hickey,* these precedents are distinguishable from the instant case, where the plaintiff can point to no likely future impact of the government's action.

With nothing concrete to point to, plaintiff attempts to shift the burden to the defense. He argues: "Nowhere does the Government point to evidence of non-injury to Mr. O'Gilvie. Nor does the Government present any fresh evidence of the absence of continuing injury beyond the six month duration of his debarment." Pl.'s Opp. at 15–16. Putting aside the interesting academic question of what "evidence" of the "absence" of something might look like, plaintiff's effort to direct the focus to the government's allegations must fail. It is the party claiming subject matter jurisdiction who bears the burden of demonstrating that jurisdiction exists. *George*, 693 F. Supp. 2d at 129, citing *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

Since plaintiff has not alleged any facts from which the court could infer that there is a likelihood that actual harm that could flow from his expired debarment, and the Court need not accept his legal conclusions, plaintiff's allegations are "too attenuated to establish injury in fact," *Hickey*, 649 F. Supp. 2d at 777, and he lacks standing. Since the Court will dismiss plaintiff's claim for lack of subject matter jurisdiction, it need not address the defendants' motion to dismiss on substantive grounds.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted. A separate order will issue.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: August 10, 2011